John B. FOWLER, Jr.

v.

Arnold COALS et al.

Civ. No. 3–76–125.

United States District Court,
E. D. Tennessee, N. D.

June 7, 1976.

D. Bruce Shine, Shelburne Ferguson, Jr., Kingsport, Tenn., for plaintiff.

Robert S. Young, Knoxville, Tenn., for defendants.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

This matter is before the Court on the motion to dismiss of defendants in which they allege, among other things, that the Court lacks subject matter jurisdiction. A hearing was held at which proof was presented and arguments were heard on the question of jurisdiction. The sole issue before the Court is whether the transaction which plaintiff claims gave him the right to maintain this action falls within the scope of 28 U.S.C. § 1359.

Plaintiff is an officer, director and shareholder of Sturkie Coal Co., Inc., [hereinafter Sturkie] a Kentucky corporation organized in November of 1973 for the purpose of acquiring the Hazard, Kentucky, mining operations of Arnold Coals, a Kentucky partnership. The complaint alleges that defendants breached a contract executed in May of 1974 by which Sturkie agreed to buy and defendants agreed to sell certain coal leases, coal supply contracts, mining equipment and other assets for a price of $7,000,000.00.

Sturkie filed a complaint in this Court on December 17, 1975, which, in respect to the claims for relief asserted against defendants, is virtually identical to the present complaint.[1] Sturkie's Kentucky citizenship, however, was the same as that of four of the defendants. When this became apparent to Sturkie, it took a voluntary nonsuit.

Plaintiff filed the present complaint on April 26, 1976, some four months after the nonsuit was taken. He alleges that he is a citizen of Pennsylvania and that the Court has jurisdiction pursuant to 28 U.S.C. § 1332. None of the defendants are citizens of Pennsylvania.

Plaintiff contends that the Court should look to his citizenship alone because in March of 1976 Sturkie assigned to him as trustee for the benefit of Sturkie's shareholders any claim that it had against defendants. The allegations of the complaint pertaining to the alleged assignment are as follows:

"In March of 1976, Sturkie assigned, transferred and set over to John B. Fowl-

---

1. Two defendants named in the original complaint are Kentucky corporations that are not parties in the present action. The Court has made the original complaint a part of the record.

er, Jr., a citizen and resident of Carlisle, Pennsylvania, as Trustee for the benefit of all stockholders in Sturkie, the claims of the corporation against the defendants herein.

The assignment by Sturkie was motivated by reason of the dormant condition of the corporation, its lack of funds to prosecute the action; its failure to be able to provide assistance in the prosecution of this lawsuit; and the availability, personal knowledge of all various aspects of and the desire of Fowler to proceed. Fowler was given 'the full power in his absolute discretion to dispose of the contemplated litigation at any time without notice to assignors.'

In consideration of accepting the assignment, Sturkie agreed to pay Fowler a bonus of $25,000 out of the proceeds of the litigation should he be successful.

Fowler had been the key figure in Sturkie since its inception and had conducted all negotiations with the defendants, which culminated in the execution of the May 25, 1974, agreement." Complaint at 2

Plaintiff and his wife together own 200,-000 shares of Sturkie's 564,000 shares of outstanding capital stock.[2] At the time the contract was negotiated, the late D. S. Sturkie and his wife each owned 125,000 shares. D. S. Sturkie was the president and treasurer of the corporation and plaintiff was its executive vice-president and secretary. D. S. Sturkie died on July 17, 1975, and his shares are now held by the administrator of this estate, R. L. Goodman, who is now a director of the corporation.

Plaintiff testified that the corporation has not been "fluid" since D. S. Sturkie's death, and that he has handled the corporate affairs without remuneration and has spent his own funds without reimbursement. It was stated at the hearing that the claim against defendant is Sturkie's only substantial asset.

After the action brought by Sturkie was nonsuited because diversity of citizenship was wanting, Sturkie's Board of Directors met to discuss the position it would take in future litigation against defendants. It was at this time that the alleged assignment to plaintiff was made.

Plaintiff testified at the hearing that the assignment was motivated by legitimate business reasons. He stated that he was a leading force in the organization of Sturkie and handled the contract negotiations with defendants on behalf of the corporation. He further stated that, while the corporation was adequately funded in the beginning of its operation, it is now without funds to prosecute this action, and that no other party in the corporation has the time to proceed against defendants.

*The Applicability of Section 1359*

■ The Court notes at the outset that when jurisdiction is challenged by a motion to dismiss based on § 1359, the burden is on the party seeking to invoke the Court's jurisdiction to prove facts that will sustain it. *Green v. Hale,* 433 F.2d 324, 329 (5th Cir. 1970); *Green & White Construction Co. v. Cormat Construction Co.,* 361 F.Supp. 125 (N.D.Ill.1973); *Dickson v. Tattnall County Hospital Authority,* 316 F.Supp. 531 (S.D. Ga.1970). It should also be noted that § 1359 was enacted to prevent diversity jurisdiction from being manufactured when none existed, and Federal courts should approach § 1359 cases with this purpose in mind.

Section 1359 provides as follows:

"A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court."

In *Kramer v. Caribbean Mills,* 394 U.S. 823, 89 S.Ct. 1487, 23 L.Ed.2d 9 (1969), the Supreme Court considered the scope of § 1359 in regard to assignments. A Panamanian corporation assigned its interest in

---

**2.** It was not disclosed at the hearing whether each owns 100,000 shares or whether the entire 200,000 shares are held jointly.

a contract to an American attorney for the purpose of collection. The factors which the Court considered significant in holding that the assignment was "improperly or collusively" made pursuant to § 1359 are as follows: (1) the assignor retained a substantial interest in the outcome of the suit since the assignee, in a later transaction, reassigned ninety-five per cent of the proceeds of the suit to the corporation; (2) the assignee lacked an independent and legitimate interest in the suit which predated the assignment; (3) the assignee stood to lose little more than his time and fee if the suit proved unsuccessful since he gave only one dollar as consideration for the assignment; and (4) the assignee admitted that the assignment was motivated in substantial part by a desire to create diversity of citizenship.

In holding that the District Court lacked subject matter jurisdiction, the Court stated:

"If federal jurisdiction could be created by assignments of this kind, which are easy to arrange and involve few disadvantages to the assignor, then a vast quantity of ordinary contract and tort litigation could be channeled into the federal courts at the will of one of the parties. Such 'manufacture of Federal jurisdiction' was the very thing which Congress intended to prevent when it enacted § 1359 . . . ." 394 U.S. at 828–29, 89 S.Ct. at 1490.

Justice Harlan left no doubt that the application of § 1359 was capable of even broader application:

"In short, we find that this assignment falls not only within the scope of § 1359 but *within its very core.* . . ." (emphasis added) 394 U.S. at 830, 89 S.Ct. at 1491.

Several district courts, relying on *Kramer,* have adopted a two-pronged test for determining whether an assignment falls within the scope of § 1359. First, it must be determined whether the assignment is real or colorable. If the assignment is

deemed colorable, then it must further be determined whether the assignment was motivated by or designed to acquire diversity of citizenship.[3] *Prudential Oil Corporation v. Phillips Petroleum Co.,* 398 F.Supp. 233 (S.D.N.Y.1975); *J. F. Pritchard Co. v. Dow Chemical of Canada, Ltd.,* 331 F.Supp. 1215 (W.D.Mo.1971); *Farrell v. Ducharme,* 310 F.Supp. 254 (D.Vt.1970).

■ Plaintiff relies primarily upon *Bradbury v. Dennis,* 310 F.2d 73 (10th Cir. 1962), for the proposition that the assignment in the present case is not colorable and thus does not fall within the scope of § 1359. *Bradbury* marked somewhat of a departure from the well-settled rule that an assignment is colorable if the assignor retains a substantial interest in the outcome of the assigned claim. *See* Comment, *Manufactured Federal Diversity Jurisdiction and Section 1359,* 69 Colum.L.Rev. 706, 713 (1969). The Fifth Circuit declined to follow *Bradbury* in *Kramer v. Carribean Mills,* 392 F.2d 387, 391–92 (5th Cir. 1968), and the Fifth Circuit's decision was affirmed by the Supreme Court. In this light, the Court is of the opinion that the retention-of-interest rule must be applied with full force to the facts of the present case. *See Williams v. Nottawa,* 104 U.S. [14 Otto] 209, 26 L.Ed. 719 (1881).

In the present case, the assignment is colorable because the assignor retained a substantial interest in the outcome of the litigation. The complaint prays for damages of $22,717,803.06. Plaintiff's potential bonus of $25,000.00 thus represents approximately one-tenth of one per cent of the potential proceeds of the litigation. Sturkie retained an interest in the remainder.

■ Plaintiff contends that, under the terms of the assignment, Sturkie retained no interest because the proceeds of the litigation will be paid directly to the shareholders. The purposes of § 1359 are best served by focusing upon the substance rather than the form of an assignment. *Cf.*

---

**3.** The Court stated in *Kramer* that it had no occasion to examine prior decisions holding that motive is irrelevant when the assignment

of a claim is absolute. 394 U.S. 823, 828 n.9, 89 S.Ct. 1487.

*Little v. Giles,* 118 U.S. 596, 7 S.Ct. 32, 30 L.Ed. 269 (1886). Sturkie's assignment to plaintiff for the benefit of the shareholders, as a practical matter, operated to retain the actual and substantial interest in the litigation in the corporation itself. The assignment, by its own terms, did not purport, nor was it intended, to transfer anything to plaintiff but a potential bonus and the power to control the litigation.[4] Under these circumstances, the Court concludes that the assignment was colorable rather than real. *See Williams v. Nottawa,* 104 U.S. [14 Otto] 209, 26 L.Ed. 719 (1881).[5]

In respect to the other factors which bear upon colorability, the Court notes that plaintiff, as a director, officer and shareholder of Sturkie, has a legitimate interest in the outcome of the suit which predates the assignment. This interest, however, is derivative rather than independent of Sturkie's interest. Similarly, plaintiff stands to lose the value of his shares should this action prove unsuccessful. The same would be true, however, in an unsuccessful action prosecuted by Sturkie.

In regard to the question of motive, plaintiff has not satisfied the Court that the desire to create diversity jurisdiction was not the dominant purpose of the assignment. As previously noted, plaintiff stated that the corporation became dormant after D. S. Sturkie's death in July of 1975. However, as evidenced by the history of this litigation, the corporation was in a position to prosecute this action in its own name as late as December of 1975.[6] Plaintiff has failed to demonstrate that any change in circumstances has occurred since the original suit was dismissed which shows that the corporation is any less able to prosecute the action now than it was in December of 1975. Plaintiff's contention that the assignment was motivated by business reasons is not persuasive because the circumstances which plaintiff contends prompted the assignment appear to have existed when the original suit was filed by Sturkie.

For the foregoing reasons, it is ORDERED that defendants' motion to dismiss for want of subject matter jurisdiction be, and the same hereby is, granted.

---

4. There is some question whether the assignment was sufficient to transfer even this much to plaintiff. The instrument purporting to assign the claim to plaintiff is signed by each of the shareholders. The instrument states:

"The intent of this instrument is to transfer to assignee the rights of the parties whose signatures appear below. . . ."

The shareholders, of course, cannot execute an instrument transferring a claim owned by the corporation. If no valid assignment was made, then Sturkie, rather than plaintiff, would be the real party in interest under Rule 17(a), F.R.C.P. Plaintiff stated that the directors approved the assignment. However, they did not sign the instrument in their capacity as directors on behalf of the corporation.

5. Cases such as *Williams v. Nottawa, supra,* which were decided under the former § 80 of the Judicial Code, continue to be important precedents in § 1359 cases. *See Kramer v. Caribbean Mills, supra.*

6. Plaintiff further alleges that the assignment was motivated, in part, by Sturkie's "lack of funds to prosecute the action." It is difficult to believe that a corporation financially able to purchase defendants' coal property for $7,000,-000.00 is unable to prosecute this case for lack of funds.