**Eugene HASKIN, Leon Fishman, and Frederick Horwin, Plaintiffs,**

v.

**CORPORACION INSULAR DE SEGUROS, Benj. Acosta, Inc., ABC Insurance Company, Jose Alfredo Cruz Barreto, Angela Vigo Sanchez, Raymond Rodriguez Leon, and Eugenio Torres Diaz, Defendants.**

**Civ. No. 86–0769(RLA).**

United States District Court,
D. Puerto Rico.

Aug. 4, 1987.

Carlos A. Piovanetti, Hato Rey, P.R., Patrick H. Stiehm, Washington, D.C., for plaintiffs.

Arturo Díaz Angueira, Cancio Nadal & Rivera, José Luis Ubarri, Law Offices of Benjamín Acosta, Jr., San Juan, P.R., Arturo Negrón García, Santurce, P.R., for defendants.

## OPINION AND ORDER

ACOSTA, District Judge.

The present case is a diversity and federal question action for wrongful denial of

insurance coverage, fraud, and violation of the RICO statute (18 U.S.C. § 1961 *et seq.*).

Plaintiffs, equal owners of Financial Fidelity of Puerto Rico, Inc. ("FFPR"), a Florida accounts receivable factoring organization with principal operations in Puerto Rico, filed this suit in their capacities as assignees of FFPR's instant claims. They allege that defendants Cruz, Vigo, Rodriguez and Torres, former employees of FFPR, defrauded the company of a substantial amount of money and that one of them, Cruz, illegally used FFPR's United States Post Office box in such a way as to incur in a RICO violation. Plaintiffs' main allegation, however, is against Corporación Insular de Seguros ("CIS") for what they argue was the insurance company's wrongful denial of plaintiffs' claim under an insurance policy. The policy provided plaintiffs with "crime coverage" or insurance against loss of money resulting from fraudulent or dishonest acts committed by an employee. In short, plaintiffs are suing the natural defendants for damages caused by fraud and they are suing the corporate defendant[1] for not indemnifying them against these losses.

The jurisdiction of the Court is premised primarily on diversity of citizenship, 28 U.S.C. § 1332. Though FFPR is a Puerto Rico corporation and defendants are all residents of Puerto Rico, FFPR assigned its claims to plaintiffs, all three of whom are citizens of the State of Florida and thus the opposing parties are of diverse citizenship for purposes of our diversity jurisdiction. Our federal question jurisdiction is primarily premised on the single RICO, 18 U.S.C. § 1961, *et seq.*, claim against defendant Cruz.

Before the Court is defendant CIS's motion to dismiss and/or for summary judgment based on lack of jurisdiction pursuant to Fed. R. Civ. P. 12 and 56. The other defendants have adopted CIS's motion. An opposition, reply, and surreply have been dutifully filed.

Defendants' jurisdictional attack is two-fold. First, they claim that there is no diversity jurisdiction in this case because of the collusive joinder of the plaintiffs to gain access to the federal court in violation of the provisions of 28 U.S.C. § 1359. Second, they argue against federal question jurisdiction on the basis that the RICO violation imputed to defendant Cruz does not state a claim upon which relief may be granted. Lastly, defendants also attack the sufficiency of plaintiffs' pleadings of fraud pursuant to Fed. R. Civ. P. 9(b). Defendants, therefore, request that the complaint be dismissed. Plaintiffs, on the other hand, deny that the assignment of FFPR's claims to them was a collusive attempt to gain diversity jurisdiction. Respecting the RICO claim, plaintiffs allege that defendants are not questioning the Court's federal question jurisdiction, but rather that they are arguing a defect in the pleading which plaintiffs can easily rectify through amendments to the complaint if necessary.

For the reasons stated below, we hold that diversity jurisdiction does exist in the present case and that the non-RICO fraud claims are properly plead but that the RICO claim must be dismissed for failure to state a cause of action. Therefore, we will deny defendants' motion regarding the diversity issue and grant it regarding the RICO issue.

## FACTUAL BACKGROUND

The following material facts, except for the last one, are uncontested. The last one, which deals with plaintiffs' Florida domicile, is amply supported by exhibits and affidavits filed by plaintiffs.

1. FFPR is a Florida corporation whose principal place of business is in the Commonwealth of Puerto Rico. (Paragraph 4 of the complaint.)

2. FFPR is an accounts receivable factoring organization which purchases accounts receivable from its clients, at dis-

---

1. The claims against Benjamín Acosta, Inc., an insurance adjusting firm which initially investigated Financial Fidelity's claim, were dismissed pursuant to a motion for voluntary dismissal by stipulation jointly filed by plaintiffs and Benjamín Acosta, Inc. Partial judgment of dismissal was entered on May 20, 1987.

counted percentages of the face value of such accounts, with recourse to require its clients to repurchase accounts that are not timely paid. (Paragraph 10 of the complaint.)

3. Defendants are all corporate or natural citizens of Puerto Rico. The corporate defendant, Corporación Insular de Seguros ("CIS"), has its principal place of business in the Commonwealth of Puerto Rico and the natural defendants are all domiciled in Puerto Rico. (Paragraph 2 of the complaint.)

4. The plaintiffs herein, Eugene Haskin, Leon Fishman, and Frederick Horwin, are each one third owners of the stock of FFPR and are personally liable on the primary financial obligations of FFPR in substantial amounts. They are also the only directors and officers of FFPR. (Paragraph 5 of the complaint.)

5. The plaintiffs, in accordance with a document dated March 28, 1986, received from FFPR an assignment of the claims set forth in the complaint. (Paragraph 4 of the complaint.)

6. Plaintiffs are each named insureds in Policy No. SMP002349 issued by CIS on February 10, 1982.

7. At all times material to this action, FFPR and plaintiffs had an insurance policy with CIS which included, among other things, "crime coverage" insurance protection for fraudulent or dishonest acts committed by an employee, acting alone or in collusion with others. (Paragraph 15 of the complaint.)

8. Pursuant to said insurance policy, on June 27, 1985, FFPR filed a proof of loss with CIS for a series of losses it allegedly sustained as a result of a scheme of actions carried out by the individual defendants, while they were FFPR employees, and certain FFPR clients between September 1, 1984 and March 15, 1985 and of the actions of codefendant, José Alfredo Cruz Barreto (Cruz), while misrepresenting himself as an employee of FFPR between March 15, 1985 and June 30, 1985. (Paragraphs 12, 13, 14, and 16 of the complaint.)

9. CIS retained Benjamín Acosta, Inc. ("BA"), an insurance adjusting firm, and said firm thereupon proceeded to investigate the claim made by FFPR. (Paragraph 17 of the complaint.)

10. On July 5, 1985, BA rejected on behalf of CIS the document filed by FFPR but, under a strict reservation of rights, nevertheless undertook the investigation of FFPR's claim. Pursuant to said investigation, on April 24, 1986 CIS denied coverage of the losses alleged by FFPR in its claim. (Paragraph 19 of the complaint and Defendants' Exhibit No. 3.)

11. On February 26, 1986, attorney Robert J. Harris, wrote a letter to CIS on behalf of FFPR expressing his concern over the investigation made by BA and stating that if FFPR were forced to litigate its claim against CIS, it would assign its cause of action to its principals, Mr. Fishman, Mr. Haskin, and Mr. Horwin, who are residents of the State of Florida, in order to conduct such litigation in the federal court. (See Defendants' Exhibit No. 4.)

12. As consideration for the assignment to them by FFPR of the claims set forth herein, the plaintiffs have agreed to prosecute said claims at their own expense and to apply the proceeds therefrom, or as much of said proceeds as shall be necessary, to the retirement of debts of FFPR. (Paragraph 6 of the complaint.)

13. The acts performed between September 1, 1984 and March 15, 1985 by some or all of the individual defendants and certain clients of FFPR in furtherance of their scheme to defraud FFPR included inducing FFPR to purchase accounts from clients which did not qualify for purchase; falsifying credit, verification and status reports; assisting clients in preparing writings which purported to be new invoices but, in fact, represented very old and uncollectible accounts; and preparing and assisting others in preparing fraudulent invoices which did not represent *bona fide* accounts and/or contained overstated amounts and selling and/or assisting others in selling those invoices to FFPR. (Paragraph 12 of the complaint.)

14. The acts of fraud subsequently performed by codefendant Cruz on more than two (2) occasions between March 15, 1985 and June 15, 1985, consisted of misrepresenting himself as an employee of FFPR and fraudulently and illegally gaining access to the U.S. Post Office box maintained by FFPR and then taking several checks property of FFPR which he deposited into a commercial and/or personal banking account. (Paragraph 13 of the complaint.)

15. None of the clients that conspired with the individual defendants to conduct the comprehensive scheme of actions to defraud FFPR were brought in as codefendants in the action and none of those clients have been named or otherwise identified by plaintiffs.

16. Each of the plaintiffs is a resident of Florida. (Paragraph 1 of the complaint, plaintiffs' affidavits and exhibits attached to Reply filed January 20, 1987.)

## ARGUMENT

### 1. *Diversity Jurisdiction*

Article III of the Constitution of the United States and the Judiciary Act of 1789 of the United States, Title 28 of the United States Code, establish and delineate the limited jurisdiction vested in the federal courts. A party which seeks access to a federal forum must meet the requirements of these laws and has the burden of establishing the existence of federal jurisdiction as to his claim.

Section 1332 of the Judicial Code reads in pertinent part as follows:

§ 1332. *Diversity of citizenship; amount in controversy; costs*

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between—

(1) citizens of different states ...

. . . . .

(4)(d) The word "states", as used in this section, includes the territories, the District of Columbia, and the Commonwealth of Puerto Rico.

In the case at bar, plaintiffs must prove that their citizenship, really their domicile within the United States, is completely different from plaintiffs'. They must also prove that the assignment of FFPR's causes of action to plaintiffs was not made solely to manufacture diversity.

From the various affidavits and other exhibits submitted by plaintiffs we are satisfied that they are *bona fide* citizens of Florida for diversity purposes. Therefore, the controlling issue is whether or not the assignment was improperly or collusively made to invoke our jurisdiction.

Title 28 U.S.C. § 1359 states:

A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court.

Early interpretations of Section 1359 were quite liberal in favor of the assignments of causes of action, even if these were without consideration or for the primary purpose of filing a suit in a federal rather than a state court. So long as the assignment was not an obvious sham and was valid under state law the federal courts would typically accept it. *See, e.g., Hartford Fire Ins. Co. v. Erie R. Co.*, 172 F. 899 (C.C.N.Y.1909); *Lang v. Elm City Const. Co.*, 324 F.2d 235 (2nd Cir.1963) (reading Section 1359 as permitting manufactured diversity).

In 1969 the Supreme Court averted the course of these early opinions and put teeth into Section 1359 by holding that it is not enough that the assignment be valid under state law, it must also be "real" in the sense that the assignee has a substantial pre-existing interest in the dispute. *Kramer v. Caribbean Mills, Inc.*, 394 U.S. 823, 89 S.Ct. 1487, 23 L.Ed.2d 9 (1969). As interpreted by Professor Moore, *Kramer* requires that we ascertain whether the assignee "had some independent, legitimate interest in the dispute that predated the assignment and was not a complete stranger to the transaction." 3A Moore's Federal Practice, Para. 17.05/3.–1/ at 17–47 (2d ed. 1979).

In *Kramer*, a contract claim was assigned for one dollar to a lawyer who had no prior connection to the matter and who simultaneously reassigned a 95% interest back to the assignor. This in effect made the lawyer/assignee a simple collection agent for the assignor. In addition, the plaintiff in *Kramer* admitted that the assignment was largely motivated by a desire to gain diversity jurisdiction. But the importance of this last factor was significantly undermined when the Court, in a footnote, declined to decide the particular relevance of motive in manufactured diversity cases. *Id.* at 828 n. 9, 89 S.Ct. at 1490 n. 9.

■ Today, there is a split among the Circuits regarding the application of Section 1359 especially concerning the weight that should be accorded to the motive factor. The First Circuit has recently studied this problem and carefully analyzed the various tests used by the Circuits. Unfortunately it did not adopt any particular test. *See Pallazola v. Rucker*, 797 F.2d 1116 (1st Cir.1986) (Court found that the administratrix of plaintiff/decedent's estate was appointed primarily to manufacture diversity jurisdiction and thus medical malpractice and wrongful death actions filed by administratrix on behalf of the estate were dismissed for lack of subject matter jurisdiction). However, with the guidance provided in *Pallazola* we conclude that motive is a relevant but not controlling factor in cases such as the one at bar where assignments of claims are challenged on jurisdictional grounds. In examining a Section 1359 claim of collusion, therefore, motive must be considered but given less weight than the determinations of whether the assignment was real or colorable and, most important, whether or not the assignee has some independent, pre-existing legitimate interest in the causes of action assigned to him.

■ Defendants argue principally that the assignment here is collusive for two reasons: (1) the assignor, FFPR, retained an interest in the claims insofar as part of any recovery would be applied to pay debts of FFPR; and (2) that plaintiffs improperly used this assignment solely to manufacture jurisdiction as evidenced by a February 26, 1986 letter to defendants from Mr. Harris, FFPR's attorney, in which he states that should his client have to sue on the insurance policy "... the claim will be assigned to the company's principals, who are residents of the State of Florida, and the litigation will be conducted in Federal Court ...".

In sum, defendants attack the assignment as not *bona fide* insofar as the consideration given, i.e., payment of some of FFPR's debts, shows that FFPR has retained a substantial interest in the litigation and is therefore the real party in interest thus making the plaintiffs mere collection agents. Also, that the collusive motive underlying the assignment has been constructively admitted by plaintiffs by way of Mr. Harris' written statements.

Plaintiffs respond that in this litigation they have a direct substantial interest as stockholders and guarantors of FFPR and as named insureds under the policy. These interests predate the assignment by FFPR. They also stress that they are personally liable to private investors/creditors of FFPR and have, in fact, used personal resources to pay obligations of FFPR. Also, that notwithstanding the statements of Mr. Harris, which they interpret as a correct statement of legal options and not a threat of a federal suit, they had nonjurisdictional considerations in the assignment such as controlling and financing the litigation as well as protecting their own personal liability regarding claims against FFPR. Finally, plaintiffs refute defendants' assertion that FFPR has retained a substantial interest in the litigation. The assignment, they argue, states that all rights, title and interest are transferred to plaintiffs and that any satisfaction of FFPR's debts is partly a benefit to them given their personal liability under the circumstances present in the instant case.

Initially, there is nothing in the assignment instrument itself which indicates that FFPR has retained any interest whatsoever in the claims. To the contrary, the document clearly states that the assignment was made for value received and that all

interest was transferred to plaintiffs. In the complaint and in response to defendants' argument that the assignment lacks consideration, plaintiffs have independently stated that part of the value or consideration received by FFPR was plaintiffs' promise to satisfy some of FFPR's debts. They also point to some 1.5 million dollars already personally paid on such debts as added value for the assignment.

Although it seems that FFPR has retained some interest in the litigation, it is hardly one that can compare to the *Kramer, supra,* scenario or that can be deemed fatal to diversity jurisdiction. *See Long John Silver's v. Architectural Engineering Products Co., Inc.,* 520 F.Supp. 753, 756 (W.D.PA. 1981).

Plaintiffs are not acting primarily to collect the debts of FFPR but, rather, they are minimizing their own liability while trying to recoup personal losses and preserve the goodwill of FFPR. Defendants challenge the adequacy of this consideration but we are reluctant to evaluate that issue mainly because defendants have failed to produce any significant evidence to contravert either plaintiffs' assertions of valid bargained-for consideration or the text of the assignment instrument which clearly states that value was received. Neither have defendants raised let alone supported any argument that plaintiffs had a pre-existing duty regarding the present claims. Under these circumstances, we find it unnecessary to delve into the question of consideration. From the record it appears, using Justice Holmes' famous metaphor, that more than a peppercorn was exchanged and certainly much more than the $1 received in *Kramer.*

We also find it significant that this whole litigation is financed and orchestrated by plaintiffs and not FFPR. A typical collection agent would by necessity act otherwise. *Long John Silver's, supra* at 756.

Most important, we find that plaintiffs/assignees had a legitimate and independent interest in the claims subject of this suit which predate the execution of the assignment.

Firstly, each plaintiff in the instant case is a named insured under CIS's policy as conceded by defendants. The reason for such insurance was to protect plaintiffs individually from claims against FFPR. The policy was issued more than three years before this suit was filed or the assignment made. Therefore, plaintiffs had longstanding, significant insurable interests of important business matters concerning FFPR, including the crime coverage provision of the insurance policy subject of this dispute. This would seem to give plaintiffs standing to sue defendants independent of the claims they acquired from FFPR if they had, as did FFPR, made a claim to defendants based on the policy and the same had been denied. But the fact that they chose not to, and instead acquired and prosecuted FFPR's claim, does not by itself indicate any impropriety or collusion but does, once again, indicate their pre-assignment interest in the matter.

The fact that plaintiffs are the stockholders and directors of FFPR; that they are personal guarantors of its debts; that according to their affidavits (with attached copies of some cancelled checks) they have made payments from personal resources to satisfy some of these debts; and that they continue to be personally liable to third parties who are investors and/or creditors of FFPR is very persuasive proof that plaintiffs are not "complete strangers" to the transaction nor mere collection agents of FFPR/assignor. Indeed, plaintiffs/assignees' interest in this case not only predates the assignment but is independent of the same and quite substantial in comparison to other cases of this nature. *See, e.g., Long John Silver's, supra* at 757 and cases cited therein; *Henley & Co. v. Miller Golf Equipment Corporation,* 300 F.Supp. 872 (D.P.R.1969). (To determine whether or not assignment is for manufacturing diversity citizenship one must look to all circumstances and conditions attending the transfer and not just motive.)

Defendants also argue that the assignment is collusive because of plaintiffs' improper motivation to artificially gain federal jurisdiction as evidenced by Mr. Harris' letter. Although Mr. Harris' statement

can be read as indicative of a desire to litigate potential claims in federal court, it is not conclusive evidence that the basis for the assignment was to pave a serpentine route to our courtroom doorstep. Even assuming that plaintiffs' motivation is partly conniving, we find it sufficiently overridden by the other factors attending the assignment, primarily plaintiffs' substantial and independent stake in this litigation.

For the reasons stated above, the Court finds that plaintiffs have met their burden of proving an adequate basis for maintaining our diversity jurisdiction over the present action. Contrariwise, defendants have failed to prove that under no conceivable set of facts could plaintiffs prove their claim or, alternatively, that the present case lacks a triable issue of fact. Therefore, defendants' motion to dismiss and/or summary judgment will be denied insofar as it concerns the diversity jurisdiction issue.

### 2. Rule 9(b) Fraud Pleading

Defendants move the Court to dismiss the claim asserted against codefendant Cruz under the RICO act, 18 U.S.C. § 1961 *et seq.*, and the claims of fraud against all the individual defendants because they fail to comply with the basic pleading requirements of Fed.R.Civ.P. 9(b). They also allege that the complaint fails to state a RICO claim upon which relief may be granted.

 Fed.R.Civ.P. 9(b) requires that "/i/n all averments of fraud ..., the circumstances constituting fraud shall be stated with particularity." A RICO suit alleging fraud as the pattern of racketeering activity should comply with Rule 9(b). This generally means that the complaint should specify the time, place, persons, and nature of the alleged fraudulent activities upon which their RICO claim is based. However, Rule 9(b) must be read with Rule 8 which provides for liberal construction of pleadings. The purpose of Rule 9(b) is to protect defendants from unfair surprise and to give a defendant notice of the claims against him. *Simcox v. San Juan Shipyard, Inc.*, 754 F.2d 430, 439 (1st Cir.1985).

A tandem reading of Rules 8 and 9 provides that a "complaint should not be struck for the failure to follow a form if the nature of the claim is apparent." *Simcox, supra* at 440.

The instant complaint, "upon information and belief", asserts a RICO claim against codefendant Cruz in Count Five by incorporating all allegations prior to paragraph 42 and stating therein:

The above-described actions of Defendant Cruz, which resulted in his obtaining possession of checks which were the property of Financial Fidelity, constituted violations of 18 U.S.C. Section 1341 (mail fraud). Said actions were part of an ongoing pattern of racketeering activity which included the remaining actions described above by Defendant Cruz, Vigo, Rodríguez, and Torres. Said scheme of actions, moreover, constituted a conspiracy to invest proceeds from a pattern of racketeering activity in an enterprise engaged in and affecting interstate and foreign commerce; to acquire control in such an enterprise by pattern of racketeering activity; and to conduct an enterprise by means of a pattern of racketeering activity.

The actions referred to in paragraph 42 are as follows. Paragraph 13 of the complaint states that defendant Cruz fraudulently and illegally gained access to the United States Post Office box maintained by FFPR by representing himself as an employee of FFPR, which he no longer was, on more than two occasions between March 15, 1985 and June 30, 1985. That Mr. Cruz proceeded to take from said mailbox several unspecified checks which were FFPR's property and subsequently deposited them into an unspecified commercial and/or personal banking account. No connection is made with the other defendants except as generally stated above in paragraph 42.

The actions complained of against the other individual defendants, i.e., Vigo, Rodríguez, and Torres, are found in paragraph 12 of the complaint. There plaintiffs allege that from September 1, 1984 to March 7, 1985 these defendants, as employ-

ees of FFPR, conspired with each other and certain unspecified clients of FFPR to conduct a scheme of actions calculated to defraud FFPR by:

a) inducing FFPR to purchase accounts from clients which did not qualify for purchase;

b) falsifying credit verification and status reports and audits;

c) assisting clients in preparation of purported new invoices which in fact, represented old uncollectible accounts; and

d) preparing and/or assisting others in the preparation of fraudulent invoices which did not represent *bona fide* accounts and/or invoices with overstated amounts, and selling or assisting others in selling those invoices to FFPR.

Defendants attack these pleadings as violating Rule 9(b) because they are made on information and belief without an accompanying statement of facts upon which the belief is founded and because they do not detail the nature of each defendant's participation in the alleged fraud nor do they include facts constituting scienter. But regarding intent, the pleadings are sufficient since Rule 9(b) allows "malice, intent, knowledge, and other condition" to be averred generally. Thus a "short and plain statement of the claim" is sufficient to meet the Rule 9 requirements with respect to intent. *McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 229 (1st Cir. 1980).

Regarding the lack of factual sources for plaintiffs' "information and belief" and the conclusory nature of the statements made, we find that the pleadings, though not a model of clarity or particularity, none-theless set forth a basic outline of the alleged fraudulent scheme sufficient to give defendants adequate notice of "who made what misrepresentations and the general time and place of such misrepresentations". *Caliber Partners v. Affeld*, 583 F.Supp. 1308 (N.D.Ill.1984). Therefore, there is no violation of Rule 9(b) regarding the fraud claims in the complaint.

### 3. Sufficiency of the RICO Claim (Federal Question Jurisdiction)

Though we find that plaintiffs have sufficiently stated a fraud claim, it does not follow that their RICO claim is sufficient as well.

In Count Five of the complaint, plaintiffs allege that defendant Cruz committed acts indictable under 18 U.S.C. § 1341 (mail fraud), to further his and his individual codefendants' fraudulent scheme against FFPR. Accordingly, plaintiffs assert a civil RICO claim under 18 U.S.C. § 1962[2].

Plaintiffs allege somewhat inartfully that defendant Cruz's mail fraud together with the other individual codefendants' fraudulent business acts constitutes a "pattern of racketeering activity", 18 U.S.C. § 1961(1)(B), from which defendants have derived substantial income and which has injured plaintiffs in their business or property. 18 U.S.C. § 1964(c).

To state a claim for a civil RICO violation, plaintiffs must prove that they were injured in their business or property by reason of defendant Cruz's operation of an enterprise through a pattern of racketeering activity. *Sedima, S.P.R.I. v. Imrex Co.*, — U.S. ——, 105 S.Ct. 3292, 87 L.Ed.2d 361 (1985).

**2.** Title 18 U.S.C. § 1962 defines the acts that are deemed to be unlawful racketeering activity. It reads in relevant part as follows:

"(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... to use or invest, directly or indirectly any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce....

(b) It shall be unlawful for any person through a pattern of racketeering activity ... to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity....

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b) or (c) of this section."

The "racketeering activity" charged in the complaint is specifically alleged to be mail fraud under 18 U.S.C. § 1341 committed by defendant Cruz as per Count Five. Count Five also states conclusory allegations regarding the other codefendants in an attempt to implicate them in the pattern of racketeering activity but we need not delve into that aspect since the RICO claim can only survive if plaintiffs can first prove that defendant Cruz actually committed mail fraud under 18 U.S.C. § 1341. (Thereafter they must prove the other RICO elements mentioned.)

■ The thrust of 18 U.S.C. § 1341 [3] is to prevent the use of the United States Post Office to carry out fraudulent schemes. *United States v. Mandel*, 591 F.2d 1347 (4th Cir.1979), *on reh.* 602 F.2d 653 (4th Cir.1979); *reh. denied* 609 F.2d 1076 (4th Cir.1979); *cert. denied* 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980).

■ The essential elements of a violation of 18 U.S.C. § 1341 are: (i) a scheme or artifice to defraud or to obtain money or property by means of false or fraudulent pretenses, representations, or promises; (ii) use of the mails for purposes of executing the fraudulent scheme; and (iii) culpable participation by the imputed person in that he made use of the mails himself or knowingly caused someone else to make such use. *United States v. Pearlstein*, 576 F.2d 531 (3rd Cir.1978).

■ Under the circumstances of the present case, 18 U.S.C. § 1341 is not applicable since defendant Cruz's fraudulent representations were not made to the parties that mailed or were to receive the checks, but, rather, the misrepresentations were made to the postal officials. Defendant Cruz misrepresented himself to them as an employee of FFPR in order to gain access to FFPR's mailbox, and to steal FFPR's checks without its knowledge or that of the check forwarders. Based on plaintiffs' allegations, defendant Cruz could not have committed a violation of 18 U.S.C. § 1341. Rather, he committed a violation of 18 U.S.C. § 1708 [4] (theft or receipt of stolen mail matter) which violation is not a predicate act or racketeering activity under 18 U.S.C. § 1961. Therefore, plaintiffs have not established the pattern of racketeering activity necessary to support a civil RICO claim [5]. Nor could they under any set of conceivable facts establish such a claim given the circum-

---

**3.** The statute in pertinent part reads:

"Whoever steals, takes or abstracts, or by fraud or deception obtains ... from or out of any mail, post office, or station thereof, letter box, mail receptable or any mail route or other authorized depository for mail matter ... any letter, postal card, package, bag or mail, or abstracts or removes from any such letter, package, bag or mail, any article or thing contained therein, or secretes, embezzles or destroys any such letter, postal card, package, bag or mail, or any article or thing contained therein ... shall be fined not more than five years, or both."

**4.** "§ 1341. *Frauds and swindles.*

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be

sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both."

**5.** Even if plaintiffs had proven a violation of 18 U.S.C. § 1341, they still would not have demonstrated a "pattern" of racketeering activity. A "pattern" requires at least two predicate acts of racketeering activity. 18 U.S.C. § 1961(5). Plaintiffs' allegations of at least two discrete transactions between defendant Cruz and the postal workers do not establish a pattern within the meaning of the RICO statute. Nor did the plaintiffs make the necessary showing of the threat of continuing racketeering activity. *Sedima, supra* at n. 14. Finally, plaintiffs have made no reasonable connection, nor can we conceive of one, between the acts of defendant Cruz and the alleged fraudulent acts of the other co-defendants such that they could come under one of the definitions of racketeering activity found in 18 U.S.C. § 1341.

stances of this claim; therefore, their RICO claim must be dismissed. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

We note in further support of our dismissal of the RICO claim that on February 12, 1987 defendant Cruz was sentenced to three years probation for violation of *18 U.S.C. § 1708* stemming from the mail theft of FFPR's check described above. *U.S.A. v. Cruz Barreto,* Criminal No. 86–495(JAF) (D.P.R. February 12, 1987).

## CONCLUSION

In summary, we hold that:

1. Plaintiffs have proven the existence of diversity jurisdiction over the present case;

2. The allegations of fraud in the instant complaint do not violate the pleading requirements of Fed.R.Civ.P. 9(b);

3. The complaint fails to state a RICO claim upon which relief can be granted and partial summary judgment will be entered dismissing Count Five; and

4. In view of the fact that a consent judgment has been entered dismissing co-defendant Benjamin Acosta, Inc., we hereby dismiss Count Three of the complaint which pertained only to Benjamin Acosta, Inc.

Accordingly, we hereby DENY defendants' Motion to Dismiss and/or for Summary Judgment filed on September 12, 1986 insofar as it challenges our diversity jurisdiction over the present case and GRANT it insofar as it pertains to the RICO claims asserted by plaintiffs. Partial judgment shall be entered dismissing Counts Three and Five of the complaint.

IT IS SO ORDERED.