ATTORNEYS TRUST, Plaintiff–
Appellant,

and

CMC Magnetics Corporation aka CMC,
a Republic of China Corporation,
Cross–Defendant–Appellant,

v.

VIDEOTAPE COMPUTER PRODUCTS,
INC., for itself & dba Video Computer
Products, Inc., Defendant–Appellee,

and

Videotape Products, Inc., Cross–
claimant–Appellee.

No. 95–55410.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 11, 1996.

Decided Aug. 20, 1996.

Richard C. Harding and W. Michael Mayock, Pasadena, California, for plaintiff-appellant Attorneys Trust and cross-defendant-appellant CMC Magnetics Corporation.

William K. Henley, Hahn & Hahn, Pasadena, California, for defendant-appellee Videotape Computer Products and cross-claimant-appellee Videotape Products, Inc.

Before FERNANDEZ and TASHIMA, Circuit Judges, and MERHIGE,* District Judge.

FERNANDEZ, Circuit Judge:

CMC Magnetics Corporation, a Republic of China corporation, claimed that Videotape Products, Inc., a California corporation (VTP), was indebted to it. CMC assigned its claim to Attorneys Trust (AT), which is a business name of a California citizen. AT itself then brought suit against VTP. VTP, in turn, cross-complained against CMC for breach of warranty in the sale of certain videotape housings. The district court found in favor of VTP and entered judgment against CMC and AT, which they now appeal. They claim that the district court had no subject matter jurisdiction and that it also made a number of errors in deciding the merits of the case.[1] We affirm.

## BACKGROUND

The business relationships between CMC and VTP are somewhat complex because most of their dealings proceeded through the use of intermediaries. Nevertheless, the district court determined that the intermediaries should be disregarded and that CMC and VTP were, in fact, dealing with one another.

Therefore, it allowed various offsets and, ultimately, rendered a substantial money judgment in favor of VTP and against CMC.

Most of the details of the transactions are not important to resolution of the jurisdictional question, but one transaction is. It is undisputed that CMC sold 1,300,000 videotape housings to VTP and that, rather than paying for them in cash, VTP purported to offset the amounts due against other debts owed by CMC to VTP.

CMC decided to sue VTP for the price of the housings ($614,110.20 after admitted offsets), but rather than do so directly it contacted AT, a collection agency. The assignment to AT was for collection purposes only and was made, as AT and CMC now say, so that CMC, a foreign corporation, would not have to navigate the American legal system by itself. AT was to proceed in the attempt to collect the alleged debt and was to receive 12 percent for its trouble. AT filed this diversity action, and when VTP cross-complained the attorney representing AT also appeared on behalf of CMC. The action then proceeded to trial and to a result inimical to the interests of CMC.

AT and CMC then decided, among other things, that the district court did not have jurisdiction because both AT and VTP were citizens of California. See 28 U.S.C. § 1332(a). This appeal followed.

## STANDARD OF REVIEW

"The existence of subject matter jurisdiction is a question of law, and our review is de novo." Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A., 20 F.3d 987, 990 (9th Cir.1994). "We will dismiss an action on appeal if jurisdiction is lacking." May Dep't Store v. Graphic Process Co., 637 F.2d 1211, 1216 (9th Cir.1980).

## JURISDICTION

It is rather unusual for a plaintiff to proceed all the way through trial and then claim that there was no jurisdiction in the

---

* The Honorable Robert R. Merhige, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

1. We address this jurisdictional claim in this opinion. The other issues are addressed in an unpublished memorandum disposition filed this date.

first place. It is more unusual, even rare, for that assertion to revolve around the question of whether an assignment for collection was sufficient to change the jurisdictional picture, but that is the issue in this case. Of course, "[a] party may raise jurisdictional challenges at any time during the proceedings." *Id.* That includes a disappointed plaintiff. *See Albrecht v. Lund,* 845 F.2d 193, 194 (9th Cir.), *as amended,* 856 F.2d 111 (9th Cir. 1988). We, therefore, will consider the jurisdictional issue, even though it was raised on appeal for the first time. *See id.*

■ A plaintiff may attempt to create or destroy diversity jurisdiction by making a transfer which is an assignment in name only. In either case, the plaintiff tampers with the jurisdiction of the court by artificially affecting it.

The more common case is one in which a plaintiff has attempted to create diversity jurisdiction by making an improper or collusive assignment. It is that kind of attempt which has attracted the attention of Congress. Congress has declared that "[a] district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." 28 U.S.C. § 1359. The Supreme Court has applied and discussed that statute in what has become the leading case in the jurisdiction-tampering area. *See Kramer v. Caribbean Mills, Inc.,* 394 U.S. 823, 89 S.Ct. 1487, 23 L.Ed.2d 9 (1969).

In *Kramer,* a Panamanian corporation, the Panama and Venezuela Finance Company (Panama), had a contractual dispute with a Haitian corporation. Because both were citizens of foreign states, there could be no diversity of citizenship between them. *Cf.* 28 U.S.C. § 1332(a)(2). Panama assigned its interest in the contract to Kramer, an attorney who was a citizen of Texas. "The stated consideration was $1. By a separate agreement dated the same day, Kramer promised to pay back to Panama 95% of any net recovery on the assigned cause of action, 'solely as a Bonus.'" *Id.* at 824, 89 S.Ct. at 1488 (footnote omitted). Kramer then brought an action in the United States District Court for the Northern District of Texas and alleged diversity of citizenship between the defendant and himself. The Supreme Court held that there was no diversity.

The Court relied upon § 1359, and in reaching its decision it declared:

> When the assignment to Kramer is considered together with his total lack of previous connection with the matter and his simultaneous reassignment of a 95% interest back to Panama, there can be little doubt that the assignment was for purposes of collection, with Kramer to retain 5% of the net proceeds "for the use of his name and his trouble in collecting." If the suit had been unsuccessful, Kramer would have been out only $1, plus costs.

*Id.* at 827–28, 89 S.Ct. at 1490. The Court went on to say that "Kramer candidly admits that the 'assignment was in substantial part motivated by a desire by [Panama's] counsel to make diversity jurisdiction available.'" *Id.* at 828, 89 S.Ct. at 1490. But the Court also stated that it was not deciding whether motive would be important if there were an absolute assignment "with the transferor retaining no interest in the subject matter." *Id.* at 828 n. 9, 89 S.Ct. at 1490 n. 9.

The Court has not spoken on the precise issue since then, but a good deal of law has developed in the other federal courts. Even though the case at hand is a destruction of diversity case, we will survey the cases which refer to creation of diversity because the informing principles are much the same. We will then take up the more meager authority on destruction of diversity and will finally apply the emergent principles to the facts of the case at hand.

**A. Creation of Diversity**

Since *Kramer,* courts have set out a number of factors which are to be considered in deciding whether an assignment is improper or collusive. Among them are: were there good business reasons for the assignment; did the assignee have a prior interest in the item or was the assignment timed to coincide with commencement of litigation; was any consideration given by the assignee; was the assignment partial or complete; and was

there an admission that the motive was to create jurisdiction. *See Pasquotank Action Council, Inc. v. City of Virginia Beach,* 909 F.Supp. 376, 383 (E.D.Va.1995) (noting "the two factors set forth in *Kramer,* that is, whether (1) there was nominal or no consideration involved in the transaction; and (2) the interest in the action retained by assignor"); *Haskin v. Corporacion Insular de Seguros,* 666 F.Supp. 349, 353–54 (D.P.R.1987) (*Kramer* requires that the assignee have "some independent, legitimate interest in the dispute that predated the assignment and was not a complete stranger to the transaction"; motive also "relevant but not controlling factor") (quotation and citation omitted); *Fowler v. Coals,* 418 F.Supp. 909, 911–13 (E.D.Tenn.1976) (applying *Kramer's* "two-pronged test" and factors to hold that assignment to stockholder of corporation's claim in consideration of $25,000 bonus of proceeds if litigation successful was colorable and motivated by desire to acquire jurisdiction).

■ There is some doubt that the subjective "motive" element is entitled to great weight. *See Haskin,* 666 F.Supp. at 354 ("[T]here is a split among the Circuits regarding the application of Section 1359 especially concerning the weight that should be accorded to the motive factor.") In *Kramer* "importance of [motive] was significantly undermined when the Court, in a footnote, declined to decide the particular relevance of motive in manufactured diversity cases.") Certainly there is no reason to give motive controlling weight in every case, although it will surely illuminate an otherwise hidden improper motive and may be virtually controlling in some cases. The objective fact of who really is the party in interest is the most important thing to be determined. But even more interesting than the factors themselves are the results of the cases applying them.

Broadly speaking, if an assignment is entire, not partial, there is a very good chance that it will be found to be proper. *See Westinghouse Credit Corp. v. Shelton,* 645 F.2d 869, 871 (10th Cir.1981) (*Kramer* held that assignments for collection, meaning "recovery on a money debt by litigation," were collusive, not assignments in which lender acquired right to " 'collect' installments from

the buyer" for sale of goods); *Baker v. Latham Sparrowbush Assocs.,* 808 F.Supp. 992, 1001–02 (S.D.N.Y.1992) (plaintiff who received assignment of rights to leasehold "not a mere shell entity or collection agent" "like the plaintiff in *Kramer* "), *aff'd,* 72 F.3d 246 (2d Cir.1995); *Haskin,* 666 F.Supp. at 354–56 (assignment which transferred "all rights, title and interest" and "made for value received" deemed bona fide after consideration of several factors); *R.C. Hedreen Co. v. Crow Tribal Hous. Auth.,* 521 F.Supp. 599, 607 (D.Mont.1981) (assignment "valid on its face" where assignor "relinquished all of its interest in the contracts at issue" and "business purpose for assignment" existed); *Nagle v. LaSalle Nat'l Bank,* 472 F.Supp. 1185, 1190 (N.D.Ill.1979) (assignment in which assignee "may derive an indirect benefit from a successful suit by partially absolving its debts" but "not receive any proceeds of a judgment" is bona fide); *Dickson v. Tattnall County Hosp. Auth.,* 316 F.Supp. 531, 533–34 (S.D.Ga.1970) (" '[t]he body of case law surrounding [§ 1359] is presently in a state of flux' " but "[t]here is no real problem in cases like *Kramer* " and if assignment is bona fide, § 1359 is not applicable even though assignment may have been motivated in part by desire to create diversity).

While motive can often be important, if the assignment is truly absolute and complete, motive often recedes into almost nothing. *See R.C. Hedreen Co.,* 521 F.Supp. at 607. However, even when there is a complete assignment, collusion may be found. That is most likely to be where there is an excellent opportunity for manipulation, as in transfers between corporations and their subsidiaries or transfers to a shell corporation. *See, e.g., Toste Farm Corp. v. Hadbury, Inc.,* 70 F.3d 640, 642, 646 (1st Cir.1995) (merger of corporation into another corporate shell ineffective to create diversity jurisdiction); *Nike, Inc.,* 20 F.3d at 991, 993 (assignment by wholly owned corporate subsidiary of its rights to parent corporation ineffective to create diversity jurisdiction); *Yokeno v. Mafnas,* 973 F.2d 803, 809–11 (9th Cir.1992) (assignment between corporation and director presumptively collusive and on remand could only be overcome with proof of legitimate business reason and consideration of several other

factors); *see also J.F. Pritchard & Co. v. Dow Chem. of Canada, Ltd.*, 331 F.Supp. 1215, 1220, 1222 (W.D.Mo.1971) (whether assignment by wholly owned corporate subsidiary of its rights to parent corporation was collusive presented "very close question of fact and law"; claim dismissed on forum non conveniens ground), *aff'd*, 462 F.2d 998 (8th Cir.1972). But other fishy complete assignments may suffer the same fate. *See, e.g., Pasquotank Action Council*, 909 F.Supp. at 379–80, 386 (a complete assignment of part of a parcel of property, where a larger part of the parcel was retained). And even an assignment meant to preserve existing diversity might run afoul of these rules where the true real party in interest is not diverse. *Compare Pratt v. First Hays Banshares, Inc.*, 682 F.Supp. 1177, 1181 (D.Kan.1988) (assignment of fractional interest in claim to preserve jurisdiction when assignor remained interested party in name only collusive) *with Samincorp, Inc. v. Southwire Co., Inc.*, 531 F.Supp. 1, 3 (N.D.Ga.1980) ("no collusion as contemplated by 28 U.S.C. § 1359" where diversity jurisdiction existed before assignment).

On the other hand, where an assignment is partial, the courts are very likely to find that there is an improper or collusive transfer because the prior owner still has an interest. There are a few minor exceptions. *See Bailey v. Prudence Mut. Casualty Co.*, 429 F.2d 1388, 1389–90 (7th Cir.1970) (assignment of claim not collusive even though assignor would receive any excess recovery not necessary to satisfy judgment against assignor); *Long John Silver's, Inc. v. Architectural Eng'g Prods. Co., Inc.*, 520 F.Supp. 753, 754–57 (W.D.Pa.1981) (unclear whether assignment was complete or if the assignor still had some interest). But they are unusual. In fact, research has not disclosed a single case where an assignment for collection (however framed or disguised) has been held to be anything but collusive. *See, e.g., Kramer*, 394 U.S. at 827–30, 89 S.Ct. at 1490–91 (assignor retained 95% of proceeds); *Airlines Reporting Corp. v. S & N Travel, Inc.*, 58 F.3d 857, 859, 861–62 (2d Cir.1995) (twenty-nine air carriers "real and substantial parties" because collection agency was "mere conduit for a remedy owing to oth-

ers"); *Harrell & Sumner Contracting Co., Inc. v. Peabody Petersen Co.*, 546 F.2d 1227, 1228–29 (5th Cir.1977) (assignment of 50% interest in net proceeds of recovery, after payment of attorney's fees and costs, plus finding that interest assigned for legal and tactical reasons collusive under *Kramer*); *Syms v. Castleton Indus., Inc.*, 470 F.2d 1078, 1082, 1090 (5th Cir.1972) (assignor retained 30% interest in claim despite contrary language in assignment; no consideration given for assignment); *cf. Fowler*, 418 F.Supp. at 910, 913 (assignment to corporate officer for benefit of shareholders).

While the courts are interested in motive because it can shed a great deal of light on otherwise ambiguous circumstances and can even be virtually controlling in some situations, the main focus is usually upon the reality of the transaction itself. Does the assignee have something to lose because he had preexisting rights; or has the assignee paid for the assignment; or has he acquired only a relatively small part of the underlying interest, a part that could be expected to relate to expenses of collection alone; or, finally, is the assignment merely one for collection? In fine, is the assignee truly a real party in interest or just a strawman for all practical purposes? If the latter, an assignment which creates jurisdiction will be dubbed improper.

**B. Assignment to Destroy Jurisdiction**

There has been much less case law on the question of assignments which destroy jurisdiction. Of course, assignments of that kind are not specifically covered by 28 U.S.C. § 1359. However, what modern authority there is also focuses on the reality of the transaction. Motive, again, is a factor, but courts have remained sensitive to and concerned by manipulations of their jurisdiction with partial assignments which lack reality and amount to no change in the identity of the party with the real interest in the outcome of the case.

In *Grassi v. Ciba–Geigy, Ltd.*, 894 F.2d 181 (5th Cir.1990), the plaintiffs had obtained a Texas state court default judgment against a United Kingdom corporation. The United

Kingdom does not allow enforcement of foreign default judgments against British corporations which do not maintain an office in the foreign country. *Id.* at 182. The Grassis decided to commence a collection action against the British corporation's parent, which was also a foreign corporation. *Id.* However, they wished to keep the action in state court. They, therefore, assigned 2% of their judgment to a Costa Rican corporation, which was to provide them with investigation and collection services. Then, they and the Costa Rican corporation brought the state court action. When the defending foreign corporation removed, the Grassis claimed that there was a lack of jurisdiction because there were foreign corporations on both sides of the case. That, they argued, precluded diversity jurisdiction. *Id.*; *cf.* 28 U.S.C. § 1332(a)(2).

The Fifth Circuit held that "[b]ecause of their similarity, assignments which destroy diversity and assignments which create diversity should be analyzed under the same standard; that is, the issue of whether the assignment was improperly or collusively made is to be resolved as a simple question of fact." *Id.* at 186. It then determined that several facts supported the proposition that the assignment in question was improper: the assignee had no prior interest in the litigation, and the assignment was made shortly before suit was filed; there was no consideration for the assignment other than what was "essentially a contingent fee arrangement for collection work, which could have been effectuated without an assignment"; the assignment was partial; and the Grassis and the assignee were represented by the same attorney. *Id.* Notably, the facts were of an objective nature, regardless of motive. However, the court determined that the real motive of the Grassis was to remain in state court. *Id.*

Other cases are to the same effect. For example, *Carter v. Seaboard Coast Line R.R. Co.,* 318 F.Supp. 368, 369, 370, 372 (D.S.C. 1970), involved an 1/100 assignment of a minor's cause of action. The assignment was expressly executed in order to remain in a certain jurisdiction. The court held that "whatever may have been deemed the rule

prior to *Kramer,* the proposition is now settled that in connection with motions [based on jurisdiction] 'neither state law nor rule 17(a) demands adherence to the principle that the underlying motive or purpose of an assignment will not be examined.'" *Id.* at 372; *see also Gentle v. Lamb–Weston, Inc.,* 302 F.Supp. 161, 162, 166 (D.Me.1969) (holding that 1/100 assignment made for purpose of destroying diversity jurisdiction did not defeat federal jurisdiction).

All of these cases involved obviously collusive partial assignments, which were motivated by a desire to defeat diversity jurisdiction. More than that, however, they were also cases where the assignee was not truly a real party in interest. Rather, the assignee was a strawman and had no real interest in the outcome of the case, although a good outcome would have had some economic value. In *Grassi,* of course, the interest was no more than a contingent fee arrangement in a collection matter, and the minuscule interests in *Carter* and *Gentle* had very very little value. As *Carter* explained, there is no more reason for federal courts to countenance destruction of jurisdiction by the use of straw parties than there is for them to countenance the creation of jurisdiction in that manner. *See* 318 F.Supp. at 373. In either event, another party is deprived of a forum to which he would otherwise be entitled, and the jurisdiction which Congress conferred upon the federal courts is manipulated. Thus, the nature of the assignment must be considered when it is argued that jurisdiction has been destroyed.

In reaching our conclusion that the nature of the assignment must be considered, we do not overlook older Supreme Court decisions regarding removal. *See, e.g., Provident Sav. Life Assur. Soc'y v. Ford,* 114 U.S. 635, 5 S.Ct. 1104, 29 L.Ed. 261 (1885); *see also Carson v. Dunham,* 121 U.S. 421, 7 S.Ct. 1030, 30 L.Ed. 992 (1887); *Leather Mfrs.' Nat'l Bank v. Cooper,* 120 U.S. 778, 7 S.Ct. 777, 30 L.Ed. 816 (1887); *Oakley v. Goodnow,* 118 U.S. 43, 6 S.Ct. 944, 30 L.Ed. 61 (1886). In those cases, the Court refused to allow removal of an action filed in state court after a diversity-destroying colorable assignment was made, even if it was for collection

only. In each of those cases, the Supreme Court indicated that it was loath to interfere with state court jurisdiction, that nothing in the removal statutes referred to removal in such an instance, and that the parties could present their real party in interest objections and their assertions about destruction of federal court jurisdiction as defenses in the state court. *See, e.g., Provident,* 114 U.S. at 640–41, 5 S.Ct. at 1107.

The Fifth Circuit has expressed doubt about the continuing validity of the underlying rationales of those cases. *See Grassi,* 894 F.2d at 182–85. While the Fifth Circuit's doubts are well grounded, we need not recite them here, nor need we rely upon them. This is not a case where removal was sought on grounds that could be characterized as defensive and which, therefore, could not be a proper basis for removal. *See, e.g., Caterpillar, Inc. v. Williams,* 482 U.S. 386, 393, 107 S.Ct. 2425, 2430, 96 L.Ed.2d 318 (1987).

This case was filed in the district court in the first instance, and the district court should have assessed its subject matter jurisdiction over the claim of AT and CMC at the commencement of the action. In so doing, it would have been proper for the district court to look at the true jurisdictional facts and to determine whether it could proceed. At the same time, the district court would have been in a position to identify the real party in interest. However, because the issue was not raised in the district court, we must now consider the jurisdictional question *ab initio.* While we are not positioned to make factual determinations, we can rely upon the undisputed facts which are before us. We will now do so.

### C. This Case

 When the above principles are applied, it becomes apparent that jurisdiction was not destroyed in this case when CMC assigned an account for collection to AT. There can be no doubt that the assignment was solely for collection and that AT was simply to get a 12% contingent fee for its trouble. The complaint declared that the assignment was merely for collection, and the assignment itself confirms that. Moreover, the asserted need for the assignment rings rather hollow. Whether CMC knew its way around the court system or not is irrelevant because it had to be represented by counsel. *See* Central Dist. of Cal. Local Rule 2.9.1 (corporation may not appear *pro se* ). When CMC itself was sued, AT's counsel merely answered the cross-complaint for CMC, and the litigation proceeded. In other words, the case has almost all of the classic elements of an assignment which does not affect jurisdiction: AT had no prior interest in the claim, and the assignment was timed to coincide with the commencement of litigation; the assignee gave no consideration other than its own collection work for a contingent fee, which could have been effectuated without an assignment; because 88% was to go to CMC, the assignment was partial, and, ultimately, the same counsel represented both CMC and AT. The true involvement of CMC is further underscored by the fact that while AT was the nominal party in the complaint, it alleged that CMC should be called the plaintiff. AT further asserted that jurisdiction was founded upon 28 U.S.C. § 1332(a)(2), which, of course, defines jurisdiction between a citizen of one state and a citizen of a foreign state. That is another clear indication that CMC was the real party in interest in this case. Finally, when CMC did become a cross-defendant in the case, AT's attorneys went on representing it with no further ado.

The only hook upon which AT and CMC now try to hang their hat is "motive," and if the only point at issue were motive, it would be a strong hook indeed. Because the action was filed in federal court, the motive (at that time) could hardly have been to destroy federal jurisdiction. In other words, they now seek to rely on an "empty mind—pure heart" approach. Despite all of the objective facts, they now say that because they did not intend to destroy jurisdiction, they have destroyed it. But because motive is only a factor, this partial assignment did not change the real party in interest for jurisdictional purposes. Their empty mind claims cannot save the day, even though their hearts have now somewhat blackened. In other words, the district court did have diversity jurisdiction. CMC and AT did not set out to defeat jurisdiction by this assignment for collection,

so they filed their action in the district court. They cannot now defeat jurisdiction by relying upon the assignment.

## CONCLUSION

This case presents the most unusual situation of a party who took an assignment for collection and who only later decided that the assignment destroyed diversity jurisdiction, even though destruction was not the motive. Thus, this case comes up in the context of an action filed directly in the district court rather than in the removal context.

■ We hold that when an action is filed directly in the district court the federal courts are empowered to determine their own jurisdiction. In doing so, they may look to all of the facts and circumstances and ask whether the assignment did destroy diversity jurisdiction. When that is done in this case, the answer is in the negative. Thus, while AT and CMC might wish that they had not entered our portals, they did—their tergiversation comes too late.

**AFFIRMED.**