## Court of Appeals.

June 22, 1894.

### PEOPLE v. MICHAEL CADY.

(60 St. Rep. 474; 143 N. Y. 100.)

Election—Residence—Prison.

> A person cannot, under the guise of, or if even without, a commitment, go to the Tombs as a prisoner with a right to be there only as a prisoner, and gain a residence there for voting purposes.

Appeal from judgment of the general term of the supreme court in the first judicial department, which affirmed a judg-

ment of the court of oyer and terminer of the city and county of New York, entered upon a verdict convicting the defendant of the crime of illegal registration.

James J. Walsh, for appellant.

John D. Lindsay, for respondent.

EARL, J.—The defendant was convicted for illegal registration in the fall of 1893, in an election district in the city of New York of which he was not at the time a resident. He claims he was a resident of the election district, and whether he was or not is the question to be determined upon the present appeal. At and before the time of his registration he was in the Tombs city prison under a commitment by a magistrate, of which the following is a copy:

"The Warden and Keeper of the City Prison of the City of New York will receive and safely keep in his custody, for examination by the Commisisoners of Public Charities and Correction, the body of Michael Cady, Charged with Destitution on Confession.

"1 District Police Court, New York, Aug. 14, 1893.

"C. W. MEADE,

"Police Justice.

"Committed to W. H. Six Months. EDWARD C. SHEEHY."

Sheehy was one of the commisioners of charities, and this commitment is supposed to have been made under section 412 of the New York Consolidation Act of 1882, which reads as follows:

"It shall be lawful for the Board of Charities and Correction to commit to any of the institutions under their charge other than penal for a period not exceeding six months, any person or persons commited to their charge by any police magistrate of the city of New York, and such vagrants as ask for commitment."

He had been in the Tombs prison for about seven years, most of the time under similar commitments. He was always committed upon his own application, and when a commitment ran

out, he would immediately, or after the lapse of some time, make application for another, and thus there might be an interval of time, probably overlooked, between two successive commitments. He was, during all the time, supported at the public expense in the prison, and was there frequently employed to carry messages and do some slight work for the warden of the prison, and while thus employed was permitted to go in and out of the prison. He was received into the prison and detained there solely by virtue of the commitments and could be formally discharged from the prison, according to the practice in vogue there, only by the authority of one of the commisioners of charities. As a witness in his own behalf he testified that he lived in the Tombs prison in the election district where he registered; that he had lived there nearly seven years; that he had no other home and never had had any other home since he went to the prison; that during that time he did not intend to have any other home; that he did intend to make the prison his home "as long as he could not do any better—could not get any other home," and that he had such intention during the whole time; that he was committed upon his own application; that he had no home, no work, and made application to be committed to get a home and work.

Now, under these circumstances did he gain a residence in the Tombs? The constitution provides in article 2, section 3, that "no person shall be deemed to have gained or lost a residence by reason of his presence or absence while kept at any almshouse or other asylum at public expense, nor while confined in any public prison."

It does not appear where his residence was before his commitment to the prison. He was at all times in a real sense a prisoner at the Tombs. He was not there as a laborer working for wages or even working for his own support, or as a member of the warden's family. He was maintained at the public expense and was confined like others of his class. One committed to prison does not cease to be a prisoner because he is not strictly confined and is permitted by the prison officials to go in and out of the prison upon errands. Nor does it matter for the purpose now in hand that the commitment was irregular or even illegal. One may be taken by violence and thrust into

prison and confined there, or he may be detained there by his consent without any commitment, and yet he could not by such detention in prison gain a residence there for the purpose of voting. Before going to the prison, the defendant had a residence somewhere, and before he could change that it was requisite that he should go to the Tombs intending to make that his home and domicile, either permanently or for some unlimited time without any intention of returning or reverting to his former residence, and in fact intending thereby to change his former residence to the Tombs. The domicile or home requisite as a qualification for voting purposes means a residence which the voter voluntarily chooses and has a right to take as such, and which he is at liberty to leave, as interest or caprice may dictate, but without any present intention to change it. It is preposterous to suppose that the defendant had within these rules and the law laid down in Silvey v. Lindsay, 107 N. Y. 55; 11 St. Rep. 185, and many other cases found in the learned brief submitted in behalf of the people, made the Tombs his residence. He was a single man. The Tombs is not a place of residence. It is not construed or maintained for that purpose. It is a place of confinement for all except the keeper and his family, and a person cannot under the guise of a commitment, or even without any commitment, go there as a prisoner, having a right to be there only as a prisoner, and gain a residence there.

We think upon all the evidence it is clear and without reasonable dispute that the defendant was not a resident in the district in which he registered; and are of opinion that no error was committed upon the trial to his prejudice.

The conviction should be affirmed.

All concur.

Judgment affirmed.