## WENDEL v. HOFFMAN et al.
### No. 6245.

District Court, D. New Jersey.
July 15, 1938.

Thos. L. Zimmerman, Jr., of Ridgewood, N. J., for plaintiff.

Harry Green, of Newark, N. J., for defendant Harold G. Hoffman.

Eugene Urbaniak and Richard J. Hughes, both of Trenton, N. J., for defendant Carroll T. Jones.

FORMAN, District Judge.

The petition to dismiss the plaintiff's complaint is based upon two grounds. First, it is contended that Wendel is a resident of New Jersey and not New York, and, hence, the prerequisite, diversity of citizenship, is lacking. Secondly, objection is made that the complaint is not verified.

Evidence relating to the domicile of Wendel was taken before a Special Master. This evidence is supplemented by affidavits.

From the facts submitted it appears that Wendel continuously resided in Trenton, New Jersey, from 1896 to the fall of 1935 at which time he was dispossessed of his home. He states that he then withdrew from New Jersey and established his residence at the Stanford Hotel in the City of New York where his business interests were located. His family, however, remained in Trenton due to his financial embarrassment and for other reasons. The New York residence was maintained until February, 1936, at which time he was allegedly kidnapped and returned to New Jersey where he was eventually confined in the Mercer County Jail. He was released upon bail and escorted by police to New York to testify as a material witness in the case of People of the State of New York v. Ellis Parker and others who were alleged to have kidnapped Wendel. He has been residing at the Hotel Towers in Brooklyn, New York within the personal restraint and custody of the police authorities ever since, and at the expense of Kings County, New York, according to Wendel's own understanding.

In the bail bonds and on other occasions prior to his release from Mercer County Jail, Wendel gave his address as either 349 Walnut Avenue, the home of his daughter, or 703 East State Street, the home of his son, both of which are located within Trenton, New Jersey. Wendel states that the reason he gave these addresses was because he had no actual New York address, and that these were the only places he could be "contacted". Evidence was also offered indicating that he had never lived at either of these addresses.

Wendel's surety testified that Wendel told him on the night of April 17, 1936, just before he was taken to New York that he was "a Trenton man, with a family in Trenton", and that he would return from New York in a short time.

On June 3, 1936, Wendel wrote to Harold G. Hoffman, Governor of the State of New Jersey, stating that he was a citizen of New Jersey. This is also explained. He states that he was seeking the aid of Governor Hoffman, and that he felt "at that time that the only possible way of getting an answer from the Governor was to state that I (he) was a citizen of the State of New Jersey".

In May of 1937 during the trial of United States v. Ellis Parker et als. Wendel stated that he lived in Trenton, New Jersey, that his wife and family lived there, and that he called that his residence.

Francis A. Madden, Assistant District Attorney in Kings County, State of New York, recited in his affidavit that during the course of his investigation in the case of People of the State of New York v. Ellis H. Parker et als. he "ascertained that preceding the kidnapping of Paul H. Wendel, that he resided in the City of New York".

There is other testimony offered which indicates that Wendel has stated on several occasions since he has been held in New York that he was a resident of New York, and that he would like to qualify as a voter of New York.

The foregoing evidence indicates that in April, 1936 Wendel was taken to Brooklyn, New York, and has ever since been detained as a material witness under the protective custody of the police authorities, who observe and control his movements.

In Millett v. Pearson, 143 Minn. 187, 173 N.W. 411, 5 A.L.R. 256, the court stated (page 412) : "As a general rule of law persons under legal disability or restraint or persons in want of freedom are incapable of losing or gaining a residence by acts performed by them under the control of others. There must be an exercise of volition by persons free from restraint and capable of acting for themselves in order to acquire or lose a residence. A person imprisoned under operation of law does not thereby change his residence."

In People of New York v. Cady, 143 N.Y. 100, 37 N.E. 673, 25 L.R.A. 399, the defendant at his own request was confined in

the Tombs prison *, and it was held that he could not acquire a domicile there for voting purposes in accordance with Article 2, § 3 of the New York Constitution as follows: " * * * no person shall be deemed to have gained or lost a résidence, by reason of his presence or absence, * * * while kept at any almshouse, or other asylum * * * at public expense, * * * nor while confined in any public prison." This result was reached even though the defendant had been present there for seven years, desired to make it his home, and notwithstanding the fact that he was free to come and go beyond the prison grounds as he chose.

Lastly, Professor Beale in his treatise, Conflict of Laws, volume 1, page 158, § 21.3, states:

"Domicil of a Prisoner.—A prisoner, being under legal restraint, cannot acquire a domicil in his prison; and his former domicil continues during his imprisonment. So where a person is carried to another state or kept there under arrest, he does not acquire a domicil there while under arrest. Even where a prisoner released from jail under bond, but compelled to live within the 'liberty' of the prison, sent for his family, hired a house and lived for several years within the liberty, it was held he did not acquire a domicil there; his residence within the liberty was merely a continuance of the imprisonment and he was not free to decide himself where to live. The desire of a prisoner to live within prison walls would be equally unavailing to confer a domicil there."

Plaintiff endeavors to escape the consequence of the above cases by the contention that he is a fugitive from the New Jersey courts, and could not possibly be a resident of the state from which he fled. This argument is not convincing, because it is clear that Wendel is not a fugitive. He was escorted by police authorities from New Jersey to New York and has ever since remained within their custody.

■ It will be unnecessary to determine the probative force of all the evidence to which reference has heretofore been made, because that part of the evidence indicating a withdrawal of residence from the State of New Jersey after Wendel was taken into custody by the police authorities on April 17, 1936 and detained in Brooklyn, New York may be discarded. At that time the law will not permit him to change his residence.

■ Domicile is the test of citizenship for the purpose of the jurisdiction of the courts of the United States. Bjornquist v. Boston & A. R. Co., 1 Cir., 250 F. 929, certiorari denied, 248 U.S 573, 39 S.Ct. 11, 63 L.Ed. 427.

In Marks v. Marks, C.C., 75 F. 321, 324, the court stated: "To constitute citizenship of a state in relation to the judiciary acts requires—First, residence within such state; and, second, an intention that such residence shall be permanent. In this sense, state citizenship means the same thing as domicile in its general acceptation. The act of residence does not alone constitute the domicile of a party, but it is the fact of residence, accompanied by an intention of remaining, which constitutes domicile. The distinction between domicile and mere residence may be shortly put as that between residence animo manendi and residence animo revertendi".

And as stated in Granite Trading Corporation v. Harris, 4 Cir., 80 F.2d 174, 176: "No better practical concept of a man's legal domicile can be obtained than from the untechnical definition of the Roman law, i. e., the place 'from which when he goes away he seems to be wandering from home.' Beale, Conflict of Laws, vol. 1, p. 124."

The court then is called upon to decide from the evidence submitted if Wendel established his domicile or residence with intent to remain in New York prior to the institution of this proceeding, and prior to the time he was detained as a material witness in New York.

The only evidence indicating that he established his domicile in New York is his own statement that after he was dispossessed of his home in the fall of 1935 he de-

---

* This "commitment is supposed to have been made under section 412 of the New York consolidation act of 1882, which reads as follows: 'It shall be lawful for the board of charities and correction to commit to any of the institutions under their charge other than penal for a period not exceeding six months, any person or persons committed to their charge by any police magistrate of the city of New York, and such vagrants as ask for commitment.' He had been in the Tombs prison for about seven years, most of the time under similar commitments." 143 N.Y. 100, 104, 37 N.E. 673, 674, 25 L.R.A. 399, 401.

cided to take up his permanent residence in New York, and from December, 1935, to February 14th, 1936, the date he was kidnapped, he resided at the Hotel Stanford in New York City. This is supplemented by the affidavit of Francis A. Madden who stated: "* * * I ascertained that preceding the kidnapping of Paul H. Wendel, he resided in the City of New York at the time of his kidnapping; that he had been residing at the Hotel Stanford, in the Borough of Manhattan, City of New York, and that he also had been employed in Brooklyn."

It is unnecessary to endeavor to construe the above testimony, because the contradictions of Wendel himself stand as an eloquent refutation of any claim that he, in fact, became a permanent resident of the State of New York.

In the bail bonds conditioned upon his return from New York, Wendel gave his address as that of his son or daughter located in Trenton, New Jersey. Wendel explains this by stating that these were given because at that time he had no actual New York address, and because these were the only places at which he could be "contacted". His immediate family at that time, however, were all living in Trenton, New Jersey, and the fact that he actually considered Trenton his domicile is indicated by the testimony of his surety, Joseph Maione. Maione stated that he had a conversation with Wendel after the bonds were given and before Wendel was taken to New York in which Wendel said: "I will come back, —don't be afraid,—I am a Trenton man, with a family in Trenton." This statement remained unexplained by Wendel.

Wendel wrote Governor Hoffman on June 3, 1936, a letter in which he referred to himself as "a private citizen of Trenton, New Jersey". His explanation that this reference to himself was made to induce a reply from the governor is not even mildly persuasive.

Finally, as late as May, 1937, Wendel testified in the case of United States v. Parker et als. that Trenton was his residence. This testimony likewise remains unexplained.

The above testimony, all of which is derived from the admissions and statements of Wendel himself is in diametrical conflict with any assertion or claim of a New York domicile. He is given too much to declaring himself "all things to all men". When he believes himself more likely to receive a service from the governor of New Jersey as a citizen of that state, he unhesitatingly asserts such citizenship. When he sees some advantage in instituting this suit in the United States District Court, and it is necessary to allege a non-resident citizenship, he becomes a citizen of the State of New York with equal lack of hesitation. His own statements preclude a finding that he permanently withdrew from the State of New Jersey to sever himself from his family and the intrenchment he had made during the long period between 1896 and 1935. The motion to dismiss the complaint is granted.

There remains a demand by the defendants, Anna Bading and Walter Yoos, that plaintiff furnish them with security for costs in this action, and an objection that the complaint is not verified. The above disposition of the motion to dismiss the complaint makes unnecessary any consideration of the merits of these contentions.