**Sylvester JONES, Appellant,**

v.

**J. Martin HADICAN, Appellee.**

**No. 76–1988.**

United States Court of Appeals, Eighth Circuit.

Submitted March 24, 1977.

Decided March 29, 1977.

Certiorari Denied May 31, 1977. See 97 S.Ct. 2658.

**250**

Sylvester Jones, pro se.

J. Martin Hadican, Clayton, Mo., filed appellee's brief.

Before LAY, BRIGHT and WEBSTER, Circuit Judges.

PER CURIAM.

Sylvester Jones appeals from the District Court's [1] dismissal of his complaint for lack of subject-matter jurisdiction. We affirm.

The facts underlying this controversy are undisputed. In 1976, appellant, then a citizen of Missouri, was convicted under a 14-count indictment for conspiracy to distribute heroin, distribution of heroin, use of a communications facility in furtherance of the distribution of heroin, and possession of heroin with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), 843(b) and 846.

He was sentenced to 35 years imprisonment to be followed by an 11-year special parole term and fined $24,000. His conviction was affirmed on appeal. *United States v. Jones,* 545 F.2d 1112 (8th Cir. 1976). Appellant was represented at trial and on appeal by a court-appointed attorney, J. Martin Hadican, also a citizen of Missouri.

On November 2, 1976, appellant filed a civil complaint against Hadican in the District Court, charging Hadican with malpractice and seeking damages of $1,308,500. Appellant alleged jurisdiction by virtue of diversity of citizenship under 28 U.S.C. § 1332(a)(1). The District Court, *sua sponte,* dismissed the complaint for lack of diversity, holding that appellant's original domicile (Missouri) did not change when he was incarcerated in the Leavenworth Penitentiary. The propriety of that holding is the central issue on appeal.

■ It has long been held that, for purposes of determining diversity of citizenship, the controlling consideration is the domicile of the individual. *See, e. g., Gilbert v. David,* 235 U.S. 561, 569, 35 S.Ct. 164, 59 L.Ed. 360 (1915); *Russell v. New Amsterdam Cas. Co.,* 325 F.2d 996, 998 (8th Cir. 1964). With respect to the domicile of prisoners, the traditional rule is that a prisoner does not acquire a new domicile when he is incarcerated in a different state; instead, he retains the domicile he had prior to his incarceration. *Polakoff v. Henderson,* 370 F.Supp. 690, 693 (N.D.Ga.1973), *aff'd per curiam,* 488 F.2d 977 (5th Cir. 1974); *Dreyer v. Jalet,* 349 F.Supp. 452, 465 (S.D.Tex.1972), *aff'd,* 479 F.2d 1044 (5th Cir. 1973); *Shaffer v. Tepper,* 127 F.Supp. 892, 894 (E.D.Ky.1955); *Wendel v. Hoffman,* 24 F.Supp. 63, 64–65 (D.N.J.1938), *appeal dismissed,* 104 F.2d 56 (3d Cir. 1939); Restatement (Second) of Conflicts of Law, § 17, Comment C. This rule was based on the notion, borrowed from conflicts of law, that a change of domicile requires a voluntary act and that the domicile of a person cannot be changed by virtue of the legal and physi-

---

1. The Honorable H. Kenneth Wangelin, United States District Judge for the Eastern District of Missouri.

cal compulsion of imprisonment. Over the years, this rule has hardened into an irrebuttable presumption.

This irrebuttable presumption rule was rejected by the Sixth Circuit in *Stifel v. Hopkins,* 477 F.2d 1116 (6th Cir. 1973). In a thoughtful opinion, the court found that the rationale of enforced movement did not justify an irrebuttable presumption in all cases. Rather, the court held that the presumption could be rebutted by a prisoner who could show facts sufficient to indicate a *bona fide* intention to change his domicile to the place of his incarceration.[2]

 We are persuaded that the approach of *Stifel v. Hopkins* expresses the better view. While retaining the usually valid presumption that a prisoner retains his pre-incarceration domicile, it is sufficiently flexible to allow a prisoner to show truly exceptional circumstances which would justify a finding that he has acquired a new domicile at the place of his incarceration. Under the rule of *Stifel v. Hopkins,* however, a prisoner must still introduce more than "unsubstantiated declarations" to rebut the presumption that he retains his pre-incarceration domicile. *Id.* at 1126. Although this standard relates to the ultimate burden of proof, there is a concomitant burden of pleading—*i. e.,* the complaint must allege facts sufficient to raise a substantial question about the prisoner's intention to acquire a new domicile.

Even giving a liberal interpretation to appellant's *pro se* complaint, he failed to allege facts sufficient to raise a substantial question as to domicile. The complaint merely alleged that his "legal residence"[3] is Leavenworth, Kansas, that he is serving a long sentence, and that his marriage has "irrevocably deteriorated." There are no other facts in the District Court record or in appellant's brief on appeal which indicate a *bona fide* intention to change his domicile. Furthermore, appellant's complaint indicates that he continues to own certain "choice" real estate in Missouri and that his real estate business has not been terminated.

Because appellant failed to allege facts sufficient to create a substantial question that he intended to acquire a new domicile, the District Court properly determined that no diversity of citizenship existed. As no other basis for jurisdiction appears,[4] the District Court order dismissing the complaint for lack of subject-matter jurisdiction is affirmed.

2. Among the factors the court listed as relevant to intention were the possibility of parole and the manner in which the prisoner conducts his business and personal transactions. Probably the most important factor in *Stifel,* however, was the fact that the prisoner had been convicted of a particularly heinous and highly-publicized crime (murder by letter bomb). As a result, the prisoner made the plausible argument that he would never return to his former domicile because he would be subject to scorn and hostility there.

3. An allegation of residence is not a sufficient allegation of citizenship. *See, e. g., Pattiz v. Schwartz,* 386 F.2d 300, 301 (8th Cir. 1968).

4. After the District Court order dismissing the complaint was entered, appellant made two other attempts to establish jurisdiction. First, appellant moved to join the United States as a defendant in an apparent attempt to evade the diversity problem by establishing jurisdiction under the Federal Tort Claims Act, 28 U.S.C. § 1346(b). Appellant alleged that Hadican was an "employee of the United States" by virtue of his appointment to represent appellant under 18 U.S.C. § 3006A. The Federal Tort Claims Act covers "employees of the United States;" however, "employees" has consistently been defined as the equivalent of "servant," with its inherent element of control. *See, e. g., United States v. Becker,* 378 F.2d 319, 321 (9th Cir. 1967). Suffice it to say that the United States had no right to control Hadican's representation of appellant.

Second, appellant alleged that the District Court's "supervisory powers" over officers of the court gave the court jurisdiction. We find no authority for this novel proposition. Although the court's supervisory powers over officers of the court extends to disciplinary proceedings, it does not constitute an independent jurisdictional base for civil disputes between attorneys and their clients.