449 F.3d 371
 Jalil Abdul MUNTAQIM, A/K/A Anthony Bottom, Plaintiff-Appellant,
v.
Phillip COOMBE, Anthony Annucci, Louis F. Mann, Defendants-Appellees.
Docket No. 01-7260-CV.
 United States Court of Appeals, Second Circuit.
 Argued: June 22, 2005.
 Decided: May 4, 2006.
 
 Jonathan W. Rauchway, (J. Peter Coll, Jr., Joshua M. Cutler, Orrick, Herrington & Sutcliffe LLP, New York, NY, William A. Bianco, Gale T. Miller, Davis Graham & Stubbs LLP, of counsel), Davis Graham & Stubbs LLP, Denver, CO, for Plaintiff-Appellant.
 Michelle M. Aronowitz, Deputy Solicitor General (Caitlin J. Halligan, Solicitor General, Julie Sheridan, Gregory Klass, Benjamin Gutman, Richard Dearing, Assistant Solicitors General, of counsel, Eliot Spitzer, Attorney General of the State of New York, on the brief), New York, NY, for Defendants-Appellees.
 Jessie Allen (Deborah Goldberg, Brennan Center for Justice at New York University School of Law, Julius L. Chambers, Anita Earls, University of North Carolina School of Law Center for Civil Rights, of counsel), Brennan Center for Justice at New York University School of Law, New York, NY, for amici curiae Brennan Center for Justice and the University of North Carolina School of Law Center for Civil Rights in support of Plaintiff-Appellant.
 
 
 1
 David B. Salmons (Sheldon T. Bradshaw, Principal Deputy Assistant Attorney General, and Cynthia M. McKnight, David K. Flynn, and David White, Attorneys, of counsel, R. Alexander Acosta, Assistant Attorney General, on the brief), Department of Justice, Civil Rights Division, Appellate Section, Washington, DC, for amicus curiae United States of America in support of Defendants-Appellees.
 
 
 2
 Peter T. Barbur, Cravath, Swaine & Moore, LLP, New York, NY, for amicus curiae Association of the Bar of the City of New York in support of Plaintiff-Appellant.
 
 
 3
 Robert Bloom (Matthew Strugar, of counsel), Center for Constitutional Rights, New York, NY, for amici curiae Center for Constitutional Rights, National Alliance of Formerly Incarcerated Persons, Osborne Association, Coalition for Parole Restoration, Voice of the Ex-Offender, Eleventh Episcopal District Lay Organization, Ordinary People Society, Center for Law and Justice, and Malcolm X Center in support of Plaintiff-Appellant.
 
 
 4
 Michael L. Foreman (Jon M. Greenbaum, Marcia F. Johnson-Blanco, Jonah H. Goldman, Lawyers' Committee for Civil Rights Under Law, Elliot M. Mincberg, Alma C. Henderson, People for the American Way Foundation, Angela Ciccolo, Interim General Counsel, Victor L. Goode, Assistant General Counsel, National Association for the Advancement of Colored People, Grasford W. Smith, Jr., National Black Law Student Association Northeast Region, of counsel), Lawyers' Committee for Civil Rights Under Law, Washington, DC, for amici curiae Lawyers' Committee for Civil Rights Under Law, People for the American Way Foundation, National Association for the Advancement of Colored People, and National Black Law Students Association Northeast Region in support of Plaintiff-Appellant.
 
 
 5
 Lawrence S. Lustberg, Gibbons, Del Deo, Dolan, Griffinger & Vecchione, P.C., New York, NY, for amici curiae Zachary W. Carter, Veronica Coleman-Davis, Scott Lassar, Leonard Marks, Paul Schechtman, National Black Police Association, National Latino Officers Association of America, and 100 Blacks in Law Enforcement Who Care in support of Plaintiff-Appellant.
 
 
 6
 Johanna Schmitt (Jonathan D. Hacker, Derek R.B. Douglas, Charles E. Borden, Scott M. Hammack, Danielle M. Estrada, of counsel), O'Melveny & Myers LLP, New York, NY, for amici curiae Center for Community Alternatives, National Association of Criminal Defense Lawyers, New York State Association of Criminal Defense Lawyers, and The Sentencing Project in support of Plaintiff-Appellant.
 
 
 7
 Steven R. Shapiro (Arthur N. Eisenberg, New York Civil Liberties Union Foundation, Laughlin McDonald, ACLU Voting Rights Project, of counsel), American Civil Liberties Union Foundation, New York, NY, for amici curiae American Civil Liberties Union and New York Civil Liberties Union in support of Plaintiff-Appellant.
 
 
 8
 Derek S. Tarson, Debevoise & Plimpton LLP, New York, NY, for amici curiae certain criminologists in support of Plaintiff-Appellant.
 
 
 9
 Brenda Wright (Lisa J. Danetz, of counsel), National Voting Rights Institute, Boston, MA, for amicus curiae National Voting Rights Institute and Prison Policy Initiative in support of Plaintiff-Appellant.
 
 
 10
 George T. Conway III (Kenneth K. Lee, Wachtell, Lipton, Rosen & Katz, Kent S. Scheidegger, Criminal Justice Legal Foundation, Roger Clegg, Center for Equal Opportunity, of counsel), Wachtell, Lipton, Rosen & Katz, New York, NY, for amici curiae Diane Piagentini, Deborah Piagentini, The Criminal Justice Legal Foundation, and the Center for Equal Opportunity in support of Defendants-Appellees.
 
 
 11
 Charles J. Cooper (Greg Abbott, Attorney General of Texas, Barry R. McBee, First Assistant Attorney General, Edward D. Burbach, Deputy Attorney General, Litigation, R. Ted Cruz, Solicitor General, Matthew F. Stowe, Deputy Solicitor General, State of Texas, David H. Thompson, Cooper & Kirk, PLLC, of counsel), Cooper & Kirk, PLLC, Washington, DC, for amici curiae States of Texas, Alabama, Arkansas, Colorado, Delaware, Idaho, Michigan, North Dakota, Ohio, Oklahoma, Pennsylvania, South Carolina, Utah, Virginia, and Washington in support of Defendants-Appellees.
 
 
 12
 Mitchell S. Garber (Gregory M. Longworth, of counsel), Worth, Longworth & London, LLP, New York, NY, for amicus curiae Patrolmen's Benevolent Association of the City of New York in support of Defendants-Appellees.
 
 
 13
 Before: WALKER, Chief Judge, MESKILL, CARDAMONE, JACOBS, CALABRESI, CABRANES, STRAUB, POOLER, SACK, SOTOMAYOR, KATZMANN, B.D. PARKER, RAGGI, WESLEY, and HALL, Circuit Judges.[1]
 
 
 14
 PER CURIAM.
 
 
 15
 Jalil Abdul Muntaqim is incarcerated at the Shawangunk Correctional Facility in Wallkill, New York, serving a life term of imprisonment following his conviction for the murder of two New York City police officers in May 1971. In September 1994, Muntaqim, an African American, filed a pro se complaint against several New York officials alleging, inter alia, that New York Election Law section 5-106, which denies the right to vote to incarcerated or paroled felons, violates section 2 of the Voting Rights Act ("VRA") because it "results in a denial or abridgement of the right . . . to vote on account of race." 42 U.S.C. § 1973(a). In January 2001, the District Court for the Northern District of New York granted Defendants-Appellees summary judgment and dismissed the complaint. Muntaqim v. Coombe, No. 94-CV-1237, slip op. (N.D.N.Y. Jan. 24, 2001). Muntaqim appealed, and, in April 2004, a panel of this Court affirmed the dismissal of Muntaqim's complaint. Muntaqim v. Coombe, 366 F.3d 102, 104 (2d Cir.2004). In October 2004, our Court voted to deny en banc review. Muntaqim v. Coombe, 385 F.3d 793, 793-94 (2d Cir.2004).
 
 
 16
 Following the Supreme Court's denial of certiorari, 543 U.S. 978, 125 S.Ct. 480 (2004), we revisited the case and agreed to rehear it en banc. Muntaqim v. Coombe, 396 F.3d 95, 95 (2d Cir.2004). The en banc court was convened to determine "whether, on the pleadings, a claim that a New York State statute, Section 5-106 of the New York Election Law, that disenfranchises currently imprisoned felons and parolees results in unlawful vote dilution, can state a claim for violation of Section 2 of the Voting Rights Act." Id.
 
 
 17
 Muntaqim was consolidated for briefing and oral argument with Hayden v. Pataki, No. 04-3886, which also raised the issue of the relationship between VRA section 2 and New York Election Law section 5-106. Following consolidation, this Court sua sponte requested supplemental briefing on Muntaqim's standing. We now conclude that, unlike Hayden, Muntaqim must be dismissed because the appellant lacks standing and, consequently, we lack jurisdiction.[2]
 
 
 18
 Before he was incarcerated in New York, Muntaqim resided and worked in California. He was never eligible to vote, nor did he ever vote in New York.[3] He was never a resident of New York, is not currently a resident of New York, and recently disavowed any intention to become a resident of New York in the future.
 
 
 19
 Muntaqim's complaint alleges that, at the time it was filed, he was incarcerated at the Shawangunk Correctional Facility. In response to our inquiry, Muntaqim conceded that he was a resident of California prior to his incarceration there in 1971 (based on a California conviction unrelated to his New York conviction), and that he has been incarcerated in either California or New York ever since. See Bottom v. Coughlin, No. 80 Civ. 541(WCC) (S.D.N.Y. July 24, 1980), 1980 U.S. Dist. LEXIS 12563, at *3; Muntaqim Decl. ¶¶ 2-3, Feb. 22, 2005. Specifically, Muntaqim was incarcerated in New York from 1972 until 1975 when he was tried for the New York murders. See Bottom, 1980 U.S. Dist. LEXIS 12563, at *3-4. Muntaqim was convicted in 1975 and sentenced to two concurrent indeterminate terms of twenty-five years to life. See id. at *4. He was then transferred to California to complete the prison term imposed following his California conviction. See id. In 1977, after completing his California sentence, he was returned here to serve his New York sentence, and he has been incarcerated ever since in various New York prisons. See id.
 
 
 20
 After serving the required term on his New York murder convictions, Muntaqim applied for parole in 2002 and 2004. See Defendants-Appellees' Ltr. Br. Mar. 1, 2005, Exs. A & C. In Muntaqim's 2002 Inmate Status Report, prepared for his July 2002 parole hearing, he represented that, if granted parole, he intended to reside with his mother in Georgia. See id., Ex. A at 5. At his July 2002 parole hearing, Muntaqim reiterated this intention and, in addition, testified that he had purchased a home in Georgia. See id., Ex. B at 24 l. 18 ("My immediate plans [sic] is to leave New York State."); id., Ex. B at 24 ll. 20-21 ("I intend to move to Georgia. I have a home there. I have purchased a home for myself."). Muntaqim's 2004 Inmate Status Report, prepared for his July 2004 re-appearance before the parole board, again indicated that he intended to reside in Georgia. Only in his most recent February 2005 declaration, filed after this Court sua sponte questioned his standing, did Muntaqim assert that if granted parole, he planned to reside in New York. See Muntaqim Decl. ¶¶ 3, 12, Feb. 22, 2005. Yet, in the same declaration, Muntaqim also asserted that he "would certainly be willing to [leave New York] as a condition of being paroled." Id. ¶ 12.
 
 
 21
 Only New York residents can register and vote in New York. New York Election Law section 5-102(1) provides that "[n]o person shall be qualified to register for and vote at any election unless he is ... a resident of this state ... for a minimum of thirty days next preceding such election." New York Election Law section 1-104(22) defines "residence" for registration and voting purposes as "that place where a person maintains a fixed, permanent and principal home and to which he, wherever temporarily located, always intends to return." Residence is critical since it is neither gained nor lost as a consequence of incarceration. Under both the New York Constitution and the New York Election Law, "no person shall be deemed to have gained or lost a residence, [for purposes of registering and/or voting] by reason of his or her presence or absence, while ... confined in any public prison." N.Y. Const. art. II, § 4; see also N.Y. Elec. Law § 5-104(1) (same). These provisions clearly establish that Muntaqim, a California resident, did not become a New York resident because of his incarceration in New York.
 
 
 22
 Furthermore, according to the New York Court of Appeals, "[t]he crucial determination whether a particular residence complies with the requirements of the Election Law is that the individual must manifest an intent, coupled with physical presence without any aura of sham." People v. O'Hara, 96 N.Y.2d 378, 729 N.Y.S.2d 396, 754 N.E.2d 155, 159 (2001) (internal quotation marks omitted). In People v. Cady, 143 N.Y. 100, 37 N.E. 673 (1894), the New York Court of Appeals, construing a predecessor to New York Constitution Article II, section 4, held that a prisoner may not assume a new residence while in prison because "[t]he domicile or home requisite as a qualification for voting purposes means a residence which the voter voluntarily chooses, and has a right to take as such, and which he is at liberty to leave, as interest or caprice may dictate, but without any present intention to change it." Cady, 37 N.E. at 674. Thus, because physical presence in a prison is necessarily involuntary, an "inmate of an institution does not gain or lose a residence or domicile, but retains the domicile he had when he entered the institution." Corr v. Westchester County Dep't of Soc. Servs., 33 N.Y.2d 111, 350 N.Y.S.2d 401, 305 N.E.2d 483, 485 (1973).[4]
 
 
 23
 These authorities establish that, under New York law, Muntaqim's involuntary presence in a New York prison does not confer residency for purposes of registration and voting. Because his inability to vote in New York arises from the fact that he was a resident of California, not because he was a convicted felon subject to the application of New York Election Law section 5-106, he has suffered no "invasion of a legally protected interest." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Moreover, there is no causal connection between New York Election Law section 5-106 and Muntaqim's inability to vote in New York, and a favorable decision of this Court on his claim that New York Election Law section 5-106 violates the VRA would do nothing to enfranchise him. See Lujan, 504 U.S. at 560-61, 112 S.Ct. 2130.
 
 
 24
 Muntaqim's failure to establish standing was not raised or discussed in the district court. Ordinarily, we would not resolve the question of standing without remanding so that the district court could address the question in the first instance. See, e.g., United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Props. Meriden Square, Inc., 30 F.3d 298, 306-07 (2d Cir.1994) (remanding to the district court for consideration of a jurisdictional issue in the first instance). Especially when the question is as fact-dependent as an individual's intent to remain in a particular state, the district court should generally be given the first opportunity to resolve the issue. In light of the specific facts before us, however, and particularly in light of Muntaqim's repeated assertions that he intended to leave the state should he be paroled, it is sufficiently clear that Muntaqim lacks standing that remand is unnecessary.
 
 
 25
 For these reasons, we conclude that Muntaqim lacks standing, and we lack jurisdiction to hear his claims. The prior opinions of the district court in Muntaqim v. Coombe, No. 94-CV-1237 (N.D.N.Y. Jan. 24, 2001), and the panel opinion of this Court in Muntaqim v. Coombe, 366 F.3d 102 (2d Cir.2004), are hereby vacated, and Muntaqim's complaint is dismissed.
 
 
 
 Notes:
 
 
 [1]
 Senior Circuit Judges Thomas J. Meskill and Richard J. Cardamone are part of theMuntaqim en banc court because they were on the three-judge panel that originally heard the case. See 28 U.S.C. § 46(c).
 
 
 [2]
 Muntaqim and Hayden are de-consolidated by order of this Court entered today. The merits of Hayden are addressed in a separate opinion filed today.
 
 
 [3]
 The facts establishing Muntaqim's lack of standing emerge from his complaint filed September 26, 1994, his sworn declaration dated February 22, 2005, his counsel's supplemental letter brief dated February 23, 2005, and Defendants-Appellees' supplemental letter brief dated March 1, 2005
 
 
 [4]
 See, e.g., Farrell v. Lautob Realty Corp., 204 A.D.2d 597, 612 N.Y.S.2d 190, 191 (N.Y.App. Div.1994) ("[I]t is long-established law in New York that a person does not involuntarily lose his domicile as a result of imprisonment."); Westbury Union Free Sch. Dist. v. Amityville Union Free Sch. Dist., 106 Misc.2d 189, 431 N.Y.S.2d 641, 643-44 (N.Y.Sup.Ct. 1980) (child born to incarcerated mother is domiciled at mother's original residence before imprisonment because incarceration did not change mother's domicile); see also Greenwald v. Bd. of Supervisors, 567 F.Supp. 200, 207-08 (S.D.N.Y.1983); Urbano v. News Syndicate Co., 232 F.Supp. 237, 239 n. 1 (S.D.N.Y.1964), rev'd on other grounds, 358 F.2d 145 (2d Cir.1966); 49 N.Y. Jur.2d Domicil & Residence § 36 (2002) ("A prison is not a place of residence; it is a place of confinement, and a person cannot go there as a prisoner and gain a residence. The freedom of choice to come and go at one's whim or pleasure are bona fide elements of determining residence and are not present in a prison setting.") (footnotes omitted); 25 Am.Jur.2d Domicil § 29 (2004) ("Since the location of domicil is voluntary, a forcible change in one's state of residence does not affect one's domicil. Thus, a prisoner's domicil ordinarily remains what it was before his or her imprisonment and does not change to the location of his or her confinement.") (footnotes omitted).